UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE SUBPOENA ISSUED TO
DANI LIBLANG AND THE
LIBLANG LAW FIRM

Underlying Case:

*In re Ford DPS6 Powershift Transmission Litigation;* Civil Action No. 2:18-ml-02814-AB-PVC, in the United States District Court for the Central District of California

Misc. Case No. _____

## MOTION TO ENFORCE RULE 45 SUBPOENA AND BRIEF IN SUPPORT

COMES NOW Plaintiffs in the underlying Ford DPS6 Powershift Transmission Litigation ("Plaintiffs") and file this Motion to Enforce Rule 45 Subpoena and Brief in Support and would respectfully show the Court as follows:

## INTRODUCTION

This Motion seeks to enforce a Rule 45 subpoena issued by the United States District Court for the Central District of California in the *In re Ford DPS6 Powershift Transmission Litigation*, Civil Action No. 2:18-ml-02814-AB-PVC (the "CA Federal MDL").  Dani Liblang and the Liblang Law Firm (collectively, "Liblang") previously represented some of the Plaintiffs with claims now pending

in the CA Federal MDL when their claims were pending in Michigan state court. Under Liblang's watch, the Michigan state court dismissed the claims of all non-Michigan plaintiffs on the basis of forum non conveniens. Following her unsuccessful Michigan mass action representation, the non-Michigan Plaintiffs whose claims were dismissed terminated Liblang's representation and retained the undersigned attorneys, Heygood, Orr and Pearson ("HOP) to represent them. HOP refiled the claims of the 11,000 non-Michigan Plaintiffs in federal court in Delaware, where Ford is incorporated, and the cases where then transferred to the CA Federal MDL where they remain pending. Despite having achieved no recovery for her former clients, Liblang filed a Notice of Attorneys' Lien in the CA Federal MDL on September 14, 2022 (the "Lien Notice"). The Lien Notice provided no explanation of the basis of the alleged lien, no amount of the alleged lien and no formula for calculating the alleged lien. For this reason, Plaintiffs were compelled to serve on Liblang the instant Subpoena seeking information relating to her supposed lien.

After being served with the Subponea, Liblang interposed a host of meritless objections and refused to produce any responsive documents. Despite prolonged informal efforts to obtain such documents, Liblang has failed and refused to produce any documents to her former clients relating to her alleged lien. Liblang's refusal to comply with the Subpoena is a breach of her fiduciary duties to her former clients as well as a breach of Michigan ethical rules. Such refusal is interfering with the ability

of the 11,000 plaintiffs in the CA Federal MDL to mediate and resolve their claims.

Having injected her alleged fee claim into the CA Federal MDL by filing her Lien

Notice, Liblang should not be allowed to stonewall her former clients and deny them

discovery of the basic facts surrounding her alleged lien.  For the reasons set forth

more fully below, Plaintiffs respectfully request that the Court overrule Liblang's

objections and compel Liblang to fully respond to the Subpoena so that they may

evaluate the existence and extent of Liblang's alleged lien.

## **FACTUAL BACKGROUND**

Beginning in 2016, the Michigan law firm Stern Law, PLLC ("Stern Law")

launched a comprehensive marketing campaign targeting consumers with potential

claims against Ford Motor Company relating to the defective DPS6 transmissions

in their 2011-2016 Ford Fiesta or 2012-2016 Ford Focus vehicles.  The marketing

campaign lasted several years and took thousands of hours of work, tens of

thousands of dollars and more than 20 intake representatives.  Through these

extensive efforts, more than 12,000 plaintiffs engaged Stern Law to represent them

against Ford.  *See* Exhibit A at ¶1.

To assist Stern Law with litigation to be filed in Michigan, Stern Law agreed

to a co-counsel arrangement with Michigan attorney Dani Liblang of the Liblang

Law Firm.  *See* Exhibit A at ¶2; Exhibit A-1.  Liblang professed to have experience

and expertise in representing Michigan consumers with Michigan "lemon law"

claims.   The December 21, 2016 Co-Counsel Agreement signed by Stern and Liblang specifically stated that it related to claims "to be filed in Michigan state or Federal Court."  Exhibit A-1 at 1.

In order to represent its clients, Stern Law had them sign fee agreements with Stern Law and Liblang.  The fee agreements did not provide for a percentage-based contingent fee.  Rather, the agreements provided that attorneys' fees would be paid by Ford and would be based on the time spent on the case by the attorneys and paralegals:

> Even though you are not responsible for the fees/costs in your case, we will be keeping track of our time at our standard hourly rates of $425.00/hour for attorney time.  The paralegal's rates are $165/hour, and will be due from the manufacturer at the time the settlement or award is distributed.

Exhibit A-2.  Fees were to be payable only in the event of a settlement or verdict. *Id.*

Subsequently, in December 2017, Stern and Liblang signed a new agreement entitled "FEE SPLIT AGREEMENT-MICHIGAN MASS ACTION CASES" pursuant to which they agreed to retain a third set of attorneys - California attorney Neil Gieleghem and California law firm Consumer Legal Remedies (collectively referred to as "CLR") - to assist with the Michigan mass action that had been filed in Wayne County Circuit Court by Stern and Liblang on behalf of more than 12,000 plaintiffs (the "Michigan Mass Action").  Exhibit A-3.

4

During the prosecution of the Michigan Mass Action, Stern Law decided that it would be in the best interests of the clients who resided in California or purchased their vehicles there to pursue their claims in California given its generous "lemon laws." Exhibit A at ¶5. Stern informed Liblang of this plan. *Id.* As a result, the claims of the California plaintiffs were dismissed from the Michigan mass action and refiled in California state court. Exhibit A at ¶5. The cases were later settled. Despite having been informed of this plan by Stern, Liblang claimed that the refiling of the cases in California was concealed from her. *Id.* She filed suit against Stern, Stern Law and CLR in Michigan state court, alleging that they were trying to prevent her from receiving her share of the fees from the settled California cases. *Id.*

As part of a mediation in the Michigan lawsuit, Liblang produced to Stern Law and CLR her hourly billing records. Exhibit A at ¶6. The billing records were not detailed by client. *Id.* The time reflected in the billing records was allegedly for all work Liblang performed on behalf of all of the Michigan Mass Action plaintiffs since she was retained. *Id.* As part of a settlement of Liblang's lawsuit, and in satisfaction of her alleged lien, she was paid more than her full hourly fees as reflected in the billing records she had produced. *Id.*

Despite Liblang's efforts in the Michigan mass action, that case provided no relief whatsoever to the non-Michigan consumers whose claims are now pending in

the CA Federal MDL.  Exhibit A at ¶7. Rather, the Michigan Court of Appeals dismissed the Michigan Consumer Protection Act claims of all plaintiffs and dismissed all claims of the approximately 11,000 non-Michigan plaintiffs on the basis of forum non conveniens.  Exhibit A- 5.  After the non-Michigan plaintiffs' unsuccessful attempt to obtain relief from the Michigan Supreme Court, the trial court judge in the Michigan mass action entered an order on April 26, 2022 dismissing all claims of the non-Michigan plaintiffs. Exhibit A-6.  Thus, as to the 11,000 non-Michigan plaintiffs, *Liblang's work resulted in their claims being dismissed with no recovery whatsoever from Ford*. Exhibit A at ¶7.

In order to proceed with an alternative plan in an alternative forum, Stern retained Heygood, Orr & Pearson and the Patrick Law Firm (collectively referred to as "HOP/PLF") to refile the claims of the 11,000 non-Michigan plaintiffs. Exhibit A at ¶8.  The non-Michigan plaintiffs terminated Liblang's services in writing and signed new fee agreements with Stern and HOP/PLF.  *See, e.g.,* Exhibits A-7, A-8, A-9.   HOP/PLF have experience in nationwide mass action cases against automotive defendants, having successfully settled thousands of similar cases against Volkswagen, Fiat Chrysler and Mercedes Benz.  HOP/PLF spent a great deal of time and money drafting, filing and serving sixty-one (61) separate lawsuits in federal court in Delaware, where Ford is incorporated.  Exhibit A at ¶8. Those lawsuits were subsequently transferred to the CA Federal MDL.

Since her termination, Liblang has aggressively pursued a fee claim relating to the non-Michigan plaintiffs despite the fact that she obtained no relief for those plaintiffs and has already been fully paid for her services as a result of the settlement of her lawsuit in California against Stern Law and CLR. Exhibit A at ¶10. Liblang filed a lawsuit against Stern and CLR in Michigan state court in 2022 asserting claims of breach of contract, breach of fiduciary duty and tortious interference. *Id.* Then, in September 2022, Liblang filed her Lien Notice in the sixty-one cases transferred to the CA Federal MDL from Delaware federal court. Exhibit A-10. The Lien Notice purports to apply to the claims of all 11,000 non-Michigan plaintiffs. Nowhere did the Lien Notice explain or identify the basis or amount of the alleged lien.

Following receipt of the Lien Notice, counsel for the 11,000 non-Michigan plaintiffs with pending claims in the CA Federal MDL issued a Subpoena for documents relating to the existence, amount and method of calculation of Liblang's alleged lien. Exhibit B-1. In response, Liblang asserted a laundry list of meritless objections to the Subpoena and refused to produce a single document to her former clients. Exhibit B-2.

Plaintiffs' counsel have since made repeated attempts to obtain documents from Liblang relating to her alleged lien. For example, on March 23, 2023, the undersigned wrote a letter to Liblang's counsel stating as follows:

[The Subpoena] was issued by my firm on behalf of thousands of clients whose prosecution of their claims against Ford are being affected by Ms. Liblang's fraudulent lien. Certainly, those clients, ***her former clients to whom she owes a fiduciary duty***, are entitled to know at least the following:

- The basis, nature and amount of any lien claimed by Ms. Liblang;

- The amount of time Ms. Liblang has billed on behalf of the clients in the Ford DPS6 litigation and the hourly rate charged for same; and

- Any amounts she has already been paid for her services.

My firm believes that any lien Ms. Liblang may have had has already been paid in full and that any work she has performed over the last year has been solely for her own benefit and to the detriment of my clients. While I am sure you disagree, it is unquestionable that my clients are entitled to the facts that will bear on the ultimate determination of the existence and scope of any alleged lien.

Exhibit B-3. A week later, on March 30, 2023, the undersigned again wrote

Liblang's counsel seeking documents relating to her alleged lien and stating:

In order to allow my clients to assess the validity and extent of Ms. Liblang's alleged lien, they need, and are entitled to, documentation relating to the lien, its basis and its prior payment. Among the documents my clients hereby demand are the following:

- All time or billing records for any work Ms. Liblang allegedly performed on their behalf, including electronic time records in native format;

- All time or billing records Ms. Liblang provide to Ken Stern as part of the settlement process of the prior lawsuit between them;

- An unredacted copy of the March 2, 2022 Settlement Agreement between Ms. Liblang, Mr. Stern and others;

- All other documents supporting the existence and amount of the alleged lien that is the subject of the Notice of Attorney's Lien she filed in the California MDL.

Any refusal to provide these documents would be in clear violation of Ms. Liblang's duties under Section 1.16(d) of the Michigan Rules of Professional Conduct, which states that:

> Upon termination of representation, a lawyer shall take reasonable steps to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by law.

MPRC 1.16(d).  Independent of the subpoena that was served on Ms. Liblang, this rule requires the immediate production of the documents listed above.

Exhibit B-4.

On April 6, 2023, the undersigned sent another letter to Liblang's attorney

stating as follows:

> Ms. Liblang needs to immediately produce all documents responsive to the subpoena with which she was served.  She chose to insert herself into the California federal court MDL by filing her bogus Lien Notice. She cannot now refuse to produce documents bearing on the validity and scope of her purported lien.  Even if she has legitimate objections to the subpoena, which we deny, she is still required to provide basic information regarding the alleged lien upon demand by her former clients, which demand was contained in my March 30, 2023 letter. *See* Section 1.16(d) of the Michigan Rules of Professional Conduct.  If Ms.

Liblang continues to refuse produce the requested documents, we will take all appropriate and necessary legal actions to compel their production.

Exhibit B-5.

After receiving no documents from Liblang in response to the Subpoena, on April 10, 2023, Plaintiffs' counsel sent the following letter in one last-ditch attempt to obtain on behalf of Liblang's former clients documents relating to her alleged lien:

Attached hereto are documents establishing that the following Ford DPS6 clients have terminated Ms. Liblang's representation and retained my firm to represent them in their claims against Ford:

1. Aaron Gates
2. Aaron Johnke
3. Bonnie Kelly
4. Carol Brown
5. Dan Wells
6. David Blakely
7. Emma Morris
8. Eugene Rossby
9. Gary Stanfield
10. Jack Thode

In order to allow these clients to assess the validity and extent of Ms. Liblang's alleged lien that is the subject of her September 14, 2022 Notice of Attorney's Lien, my clients need, and are entitled to, documentation relating to the lien, its basis and its potential prior payment. Among the documents my clients hereby demand are the following:

- All time or billing records for any work Ms. Liblang allegedly performed on their behalf, including electronic time records in native format;

- All time or billing records for any work Ms. Liblang allegedly performed on behalf of the plaintiffs in the Ford DPS6 transmission litigation.

- An unredacted copy of the March 2, 2022 Settlement Agreement between Ms. Liblang, Mr. Stern and others;

- All documents on which Ms. Liblang relies to support the existence of the alleged lien that is the subject of the Notice of Attorney's Lien she filed in the California MDL.

Any refusal to provide these documents would be in clear violation of Ms. Liblang's duties under Section 1.16(d) of the Michigan Rules of Professional Conduct, which states that:

> Upon termination of representation, a lawyer shall take reasonable steps to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by law.

MPRC 1.16(d).

Exhibit B-6.  Despite these repeated attempts, ***Liblang has failed and refused to produce a single document requested by the Subpoena or by requests from Plaintiffs' counsel***.  As a result, Plaintiffs have been forced to file the instant Motion.

Although the Subpoena requested some fifty-eight (58) categories of documents, this Motion only seeks to compel the production of documents responsive to the following ten (10) requests:

All fee agreements between you and any of the CAMDL Clients.

Any co-counsel, joint representation agreement, fee split agreement or similar agreement to which you are a party that relates to the actual or potential representation of the CAMDL Clients.

All documents supporting the truthfulness or accuracy of the statements made in the Lien Notice.

All documents reflecting the total amount of the alleged lien referenced in the Lien Notice.

All billing records, fee statements, timesheets or other documents substantiating the hours you allegedly spent representing any of the CAMDL Clients.

All billing records, fee statements or other documents substantiating any expenses or costs you allegedly incurred on behalf of any of the CAMDL [Clients].

All documents relating to the settlement of the 2020 Lawsuit, including but not limited to all demand letters, settlement offers, fee statements, billing records, settlement agreements, checks or other evidence of payment.

All documents relating to or reflecting any payments you have received for any work you allegedly performed on behalf of the CAMDL Clients.

All documents relating to or reflecting any payments you have received for any work you allegedly performed on behalf of the CAMDL Clients since April 2022.

All lien letters you have sent relating to the CAMDL Clients.

Exhibit B-1 at request nos. 6, 10, 19, 21, 27, 33, 35, 38, 41, 53.

Liblang's Lien Notice is adversely affecting the ability of the 11,000

consumers with claims in the CA Federal MDL from engaging in meaningful

settlement discussions with Ford.  Exhibit A at ¶12.  And her refusal to provide any information regarding the Lien Notice is undermining the ability of the Plaintiffs to seek adjudication of her alleged lien.  Liblang chose to insert herself into the CA Federal MDL by filing her bogus Lien Notice with the intent and understanding that it would hold up the potential settlement of those cases.  She cannot now claim in good faith that the Plaintiffs in that case are not entitled to information regarding the existence, scope and terms of her alleged lien.  For these reasons, and the reasons set forth in the accompanying Brief in Support, Plaintiffs respectfully request that the Court grant this Motion, overrule Liblang's objections, order Liblang to immediately produce the requested documents and award Plaintiffs such other and further relief to which they may be justly entitled.

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
## TO ENFORCE RULE 45 SUBPOENA

**I.      The information sought in the Subpoena and in this Motion is relevant.**

In her written objections, Liblang claimed that the information sought in the Subpoena was not relevant to any issues in the CA Federal MDL because "the DPS6 MDL involves the defective manufacture by Ford Motor Company of certain transmissions in Ford vehicles."   Exhibit B-2 at 1-2.   This argument is specious because it completely ignores the fact that Liblang injected the issue of the existence, scope and amount of her alleged attorneys' fee lien into the case by filing her Lien Notice in the CA Federal MDL.   Here, in order for any of the 11,000 Plaintiffs to settle their claims, they will need to know the net recovery that would result from any potential settlement.   That will necessarily entail a determination of the existence and amount of Liblang's alleged lien.   Moreover, Ford will undoubtedly require information about Liblang's alleged lien before it will pay any settlement proceeds to the Plaintiffs or their attorneys, and has already expressed concerns in this regard. Where a lien is at issue, as here, discovery related to the lien is clearly permitted. *See, e.g., Broom v. Kountze*, 8:14CV206, 2016 WL 5921067, at * 3 (D. Neb. Oct. 11, 2016) (court denied non-party law firm's motion to quash subpoena for billing records); *Reynolds v. Cactus Drilling Co.*, No. MO:15-CV-00101, 2015 WL 12660112, at *4 (W.D. Tex. Dec. 30, 2015) (in auto accident case, court denied

motion to quash subpoena issued to non-party relating to its alleged worker's compensation lien); *Commercial Law Corp. v. FDIC*, No. 10-13275, 2012 WL 137835, at *2 (E.D. Mich. Jan. 18, 2012) (court granted motion to compel production of information relating to alleged attorney lien, stating that "data and metadata related to the purported attorneys' liens is relevant and discoverable."); *Rios v. Ramage*, No. 19-2602-JWB-ADM, 2020 WL 6701206, at *2 (D. Kan. Nov. 13, 2020) (court denied motion to quash subpoena seeking hospital lien information from third party).

Second, Liblang's argument ignores the broad standard of relevance applicable to a Rule 45 subpoena. "The scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Callidus Cap. Corp. v. FCA Grp.*, 2018 WL 1556231, at *3 (E.D. Mich. Mar. 30, 2018) (citation omitted); *Sys. Prod. & Solutions, Inc., v. Scramlin*, No. 13–14947, 2014 WL 3894385, at *9 (E.D. Mich. Aug. 8, 2014) ("Rule 26(b) defines the scope of discovery for a subpoena issued pursuant to Rule 45, even when it is issued to a non-party."). And the rules of discovery, including Rule 26, are to be given broad and liberal construction. *Goode v. Mercy Memorial Hosp.*, No. 11-10037, 2014 WL 7369926, at *4 (E.D. Mich. Dec. 29, 2014). Here, there can be no question that the requested information is relevant to Liblang's lien claim and Plaintiffs' defenses to that claim. As such, Liblang should be ordered to produce the requested material identified above.

**II.    Liblang has not met her burden to demonstrate that compliance with the subpoena would impose an undue burden.**

In her written objections, Liblang claimed that producing the documents sought in the Subpoena "would be unduly burdensome and would impose undue expenses on Liblang."  Exhibit B-3 at 2.  This blanket objection did not identify the specific requests for which compliance would be unduly burdensome.  Nor did it provide any factual basis for the bald assertion that compliance with the subpoena would impose an undue burden.  Under well-established law, the burden is on the party resisting discovery to demonstrate that compliance with a subpoena would impose an undue burden.  *See, e.g., In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 WL 1790189, at *3 (E.D. Mich. May 10, 2011) ("The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged."); *Hennigan v. General Electric Co.*, no. 09-11912, 2012 WL 13005370, at *1 (E.D. Mich, April 2, 2012) ("[o]n motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost.").  To meet this burden, the resisting party "must show that disclosure will cause it a 'clearly defined and serious injury."  *State Farm Mutual Ins. Co. v. Warren Chiropractic*, 315 F.R.D. 220, 224 (E.D. Mich. 2016).  This requires a particularized showing of harm rather than the boilerplate objection raised by Liblang.  *See, e.g., State Farm Mut. Auto.*

*Ins. Co. v. Elite Health Ctr.*, No. 2:16-cv-13040, 2019 WL 2754653, at *12 (E.D. Mich. July 2, 2019) ("[i]f an objection is interposed based on an alleged undue burden, the objecting party must make a specific showing, usually . . . by affidavit, of why the demand is unreasonably burdensome.'"); *Reed v. Illinois*, 318 FRD 77, 79 (N.D. Ill. 2016) ("It is up to the respondent to establish undue burden with a particularized showing."); *Lowe v. Vadlamudi*, No. 08-10269, 2012 WL 3887177, at *2 (E.D. Mich. Sept. 7, 2012) (Party opposing subpoena "cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena."). Here, Liblang has wholly failed to explain how or why compliance with the subpoena would be unduly burdensome, especially considering that she injected herself into the CA Federal MDL by filing her baseless Lien Notice. Her objection should be overruled. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2013 WL 10936871, at *14 (E.D. Mich. Nov. 26, 2013) ("[W]here [the respondent] has not supported his claim of burden by affidavit or otherwise, his bare assertion is insufficient to permit refusal to comply with the subpoena in its entirety.").

While couched in terms of undue burden, Liblang's real complaint seems to be that some of the requested documents are in the possession of Kenneth Stern, co-counsel in the CA Federal MDL. Exhibit B-2 at 2. But this objection has no bearing

on whether it would be unduly burdensome for Liblang to produce the documents. And courts have routinely rejected similar arguments. *See, e.g., Stockwell v. Hamilton*, no. 15-11609, 2019 WL 7582646, at *2 n. 1 (E.D. Mich. July 19, 2019) (Rejecting Stockwell's objection to producing documents that are "already in the possession, custody, and control of Hamilton or his attorneys" and explaining that "Hamilton is entitled to know that he has received responsive documents in *Stockwell's* possession, custody, or control after *Stockwell* has conducted a reasonable search for them.); *Broom v. Kountze*, 8:14CV206, 2016 WL 5921067, at * 3 (D. Neb. Oct. 11, 2016) (court denied non-party law firm's motion to quash subpoena for billing records, rejected argument that records were already in movant's possession and explained that "while Domina suggests the records were already provided to Kountze, contemporaneous with his legal representation, and may also be in Broom's possession, Kountze need not rely on his own (or Broom's) possibly incomplete records.").

Here, Liblang's burdensomeness objection applies to only three of the specific requests at issue in this Motion:

> Any co-counsel, joint representation agreement, fee split agreement or similar agreement to which you are a party that relates to the actual or potential representation of the CAMDL Clients.

> All documents relating to the settlement of the 2020 Lawsuit, including but not limited to all demand letters, settlement offers, fee statements, billing records, settlement agreements, checks or other evidence of payment.

All lien letters you have sent relating to the CAMDL Clients.

Exhibit B-2 at 2; Exhibit B-1 at request nos. 10, 35, 53.  With respect to these three requests, Plaintiffs are entitled to know what fee agreements or co-counsel agreements Liblang is relying on to establish her alleged lien.  Exhibit B-1 at request no. 10.  And they are similarly entitled to copies of any lien letters sent on Liblang's behalf (Exhibit B-1 at request no. 43), which, incidentally, Liblang fails to demonstrate would be in Stern's possession.  Finally, although Stern Law has produced the settlement agreement for the California settlement with Liblang, he was compelled by its confidentiality provision to redact the settlement amount, information which Plaintiffs need to determine the amount of attorneys' fees Liblang has already been paid for her work in the DPS6 litigation.  For the above reasons, the Court should overrule Liblang's "undue burden" objections.

## III. Liblang cannot meet her burden to demonstrate that the requested discovery is not proportional to the needs of the case.

In her written objections, Liblang asserted that the requested discovery is not proportional to the needs of the case.  Exhibit B-2 at 2-3.  But her objection was mere boilerplate, provided no explanation whatsoever and did not even reference any specific requests.  As such, the objection must be overruled.  *See, e.g., Mainstreet Collection, Inc. v. Kirkland's Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010) ("the movant must make a particularized showing that the information sought is

either irrelevant or not proportional to the needs of the case."); *Club Exploria, LLC v. Aaronson, Austin, P.A.,* No. 6:18-cv-576-Orl-28DCI, 2019 WL 13150470, at *3 (M.D. Fla. Aug. 26, 2019) (Court overruled objection to subpoena where objecting party "provided no argument or evidence to suggest that the burden of complying with the Subpoena outweighs the relevance of the Subpoena or that the Subpoena is otherwise disproportionate to the needs of the case."); *Fusion Elite All Stars v. Nfiinity Athletic LLC*, No. 22-cv-22226, 2022 WL 1175691, at *3 (W.D. Tenn. April 20, 2022) ("Upon a showing of relevance, the burden shifts to the party opposing discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case.").

## IV.  Liblang's privilege claims are unsupported, misplaced and provide no basis for her refusal to produce the requested information.

Finally, in her written objections, Liblang asserted that several of the requests called for the production of documents protected by the attorney-client and attorney work product privileges.  Exhibit B-2 at 3.  There are multiple issues with her privilege claims.  First, the undersigned represents Liblang's former clients and had the subpoena issued on their behalf in order to obtain documents relating to Liblang's Lien Notice filed in the CA Federal MDL.  It is well-established that the attorney-client privilege belongs to the client.  *See, e.g., Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 475 (W.D. Mich. 1997) ("The attorney-client privilege belongs to

the client, Perrigo Company, and not to the lawyer."); *Bauer v. County of Saginaw*, No. 14-11158, 2015 WL 12806498, at *3 (E.D. Mich. Feb. 23, 2015) ("The privilege belongs to and may be waived only by the former client").  As such, Liblang cannot invoke the privilege to shield documents from her former clients regarding her prior representation.  The same is true with regard to the work product privilege since Liblang's former clients are entitled to her work product.  *See Matter of Michigan Boiler and Eng. Co.*, 87 B.R. 465, 468 (Bankr. E.D. Mich. 1988) ("The work product doctrine, when applicable, serves to protect disclosure to an adversary.  It has no application in cases where a client seeks to obtain documents and other tangible things created or amassed by an attorney during the course of the attorney's representation of that client.").  Finally, the applicable ethical rules *require* Liblang to produce the information requested by her former clients:

> Upon termination of representation, a lawyer shall take reasonable steps to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, ***surrendering papers and property to which the client is entitled,*** and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by law.

MPRC 1.16(d) (emphasis added).  *See* Exhibits B-3 to B-6.

   The specific documents Liblang claims are privileged that are the subject of this Motion are the following:

   All fee agreements between you and any of the CAMDL Clients.

All billing records, fee statements, timesheets or other documents substantiating the hours you allegedly spent representing any of the CAMDL Clients.

All billing records, fee statements or other documents substantiating any expenses or costs you allegedly incurred on behalf of any of the CAMDL.

All documents relating to or reflecting any payments you have received for any work you allegedly performed on behalf of the CAMDL Clients.

All documents relating to or reflecting any payments you have received for any work you allegedly performed on behalf of the CAMDL Clients since April 2022.

*See* Exhibit B-1 at request nos. 6, 27, 33, 38, 41; Exhibit B-2.  But fee agreements are simply not privileged, even when requested by a party's adversary.  *See, e.g., Pugliese v. IC System, Inc.*, No. 2:09-CV-118312010 WL 11545062, at *4 (E.D. Mich. July 21, 2010) ("[c]laims that attorney retainer or fee agreements are protected from disclosure by the attorney-client privilege have repeatedly been rejected by the Federal courts.").  As for billing records, while the specific entries in Liblang's billing records may constitute work product, her work product belongs to Plaintiffs, her former clients.  And Plaintiffs offered to negotiate a protective order that would shield such information from Ford or any third party.  Exhibit B-3 ("any privilege concerns vis-à-vis Ford can be addressed through a protective order pursuant to which my clients will agree to keep any and all privileged information confidential.").  Liblang rejected this offer and has refused to provide her billing records to her former clients despite the fact that they presumably form the basis of

the Lien Notice she filed in the CA Federal MDL.  Finally, as for information related to payments Liblang received for work performed on behalf of the non-Michigan Plaintiffs, there is no legal basis for asserting privilege.  For the reasons set forth above, Liblang's privilege objections should be overruled.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter an order:

A.    Overruling Liblang's objections to the Subpoena;

B.    Ordering Liblang to produce all documents responsive to Subpoena request nos. 6, 10, 19, 21, 27, 33, 35, 38, 41, 53; and

C.    Granting Plaintiffs such other or further relief as may be appropriate.

DATED:  April 14, 2023.

Respectfully submitted,

/s/ *Eric Pearson*
Eric D. Pearson
eric@hop-law.com
Charles Miller
charles@hop-law.com
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161, Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFCATE OF CONFERENCE**

I hereby certify that there was a conference between attorneys or unrepresented parties and other persons entitled to be heard on the foregoing motion in which movants explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought.

/s/ *Eric Pearson*
Eric D. Pearson

**CERTIFCATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was electronically filed with the United States District Court for the Eastern District of Michigan through the CM/ECF electronic filing system and was served on counsel for Dani Liblang and the Liblang Law Firm as well as counsel for Ford Motor Company by email and regular mail on the 14th day of April, 2023:

Counsel for Dani Liblang and Liblang Law Firm:

Kenneth M. Mogill
kmogill@bignet.net
Mogill, Posner & Cohen
27 E. Flint Street, 2nd Floor
Lake Orion, MI 48362

Counsel for Defendant Ford Motor Company:

Spencer P. Hugret (SBN 240424)
*shugret@grsm.com*
**GORDON REES SCULLY
MANSUKHANI LLP**
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111
Tel: 415-986-5900
Fax: 415-986-8054

Frank P. Kelly III (SBN 83473)
*fkelly@shb.com*
**SHOOK HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: 415-544-1900
Fax: 415-391-0281

/s/ *Eric Pearson*
Eric D. Pearson